Your Honors, the issue here should be simple and straightforward. Restitution may only include losses that are part of the offense of conviction. There are two exceptions which do not apply here. The district court imposed restitution for losses that were not part of the offense of conviction. But they were part of the indictment, weren't they? I don't believe so, Your Honor. Well, they were during the time period, and they were in the place which was identified as whatever county and elsewhere. So literally, they are encompassed within the indictment, even though they weren't discussed in the description of what he was admitting to specifically. So what do we do with that? Let's be clear. The issue with Target is that it occurred in a different district in a different state. That's right, but the indictment said here and elsewhere, and it gave a fairly broad time period. So the real – I mean, I view it as kind of a narrow question. The indictment is broad enough to cover it, but clearly it's not discussed in any way at the time of the taking of the plea. Well, in fact, it was. The factual basis was laid out very clearly at the time of the taking of the plea on the page. Right. We're saying the same thing in a different way. So the factual basis is X, okay, and the other restitution is for Y. But the indictment can be read broadly enough to cover X and Y. So what do we do in that situation? Well, I think if – It's related conduct, at least. Well, it's related conduct, which is perhaps why it could – At least. The Court is clear – this Court is clear that restitution does not apply to related offenses. It has to apply to conduct from the offense of conviction. Right. That's why I was starting with the indictment, which to me seems broad enough. And I guess in connection with that, what effect does it have that we're reviewing here for plain error? Well, I don't believe we are reviewing for plain error, Your Honor. This Court has said that de novo review applies because we're just dealing with a pure question of law involving whether the restitution order was legal. We're not getting into the facts of the amounts or anything like that. No, but it's still, I guess, an application of law to facts in a way. We know where is the target. It's in another place. And when did these take place? Is it within – so there are some factual aspects to it. Well, I believe this Court's law is consistent that de novo would apply, that in fact under May this Court made very clear you can, in fact, raise this issue for the first time on direct appeal. Now, if this Court were to disagree with all of this Court's precedents and still say plain error applies, I don't think it makes a difference because this was plain error. The outcome, in fact, would be the same. The Tenth Circuit in Gordon, when the Tenth Circuit does apply plain error to this to restitution orders, it would be essentially a miscarriage of justice to require a defendant to pay more than what he's obligated to pay. And that, by definition, would be plain error. Let me ask you a question. I've been thinking about this sort of on an academic basis. Let me ask you a practical question. Do I understand that the district judge found that he's indigent? The district judge found that he's indigent? Yes, Your Honor.  And not only that, but the district judge said he's not going to order him to pay any interest and other, he waived other things? That is correct, Your Honor. And after he gets out of prison, he's going to be deported to China? Presumably. Okay. So what exactly is the practical effect of this? Well, it could convert into a civil judgment against him, which would be hanging over him. From a practical standpoint, might he ever ultimately pay? Who knows? Probably not. I guess it's the Shanghai lottery. You can go try to collect a judgment against him. But, I mean, this is, he can't pay the $74,000 that you don't object to. So I don't know how he's going to pay the $146,000, you know. No, I think that's right. And it's just a matter of the legal issue that's involved here. Is he still in prison? He was released from Federal custody in December. I'm not sure where he is right now. He obviously had an outstanding warrant in Colorado where he was facing the target charges. And so I don't believe he's been deported at this point. But he was released from Federal custody on this matter. Thanks. So unless the Court has additional questions, I reserve the balance. Did she? No. No. Thank you very much, Mr. Libby. Good morning. Good morning. Jean-Claude André on behalf of the United States. I'd like to start with the defendant's assertion that plain error review does not apply and that de novo review applies. To be sure, both parties have cited this Court's 1996 decision in the United States v. Reed, which did apply, I guess what we canonically call the Evans-Martinez rule, that issues are brought to the Court's discretion. de novo despite being forfeited below. Of course, we think that Evans-Martinez needs to be cabined to a particular context because that statement of law would seem to run counter to everything from Bond, Dominguez-Benitez, Puckett-Marcus. The Supreme Court's repeated insistence that plain error review applies to all non-structural errors. Of course, even this Court's decision from 2009 in the United States v. May that Mr. Libby just mentioned, also cited in the briefs, that case actually did review for plain error. On page 1215 of the Court's opinion, it said we find that this Court plainly erred, but it didn't jettison plain error review and instead applied de novo review. It applied plain error review to that claim. I guess, Judge Graber, you asked, you know, what do we do with the situation where you have an indictment that is broad enough to cover both sets of conduct and a factual basis that is narrower? I guess I'd like to point the Court to government's excerpts page 9. That's the status report that the government filed six days before the change of plea. Certainly in that document, the government said that the following factual basis is offered to support defendant's guilty plea should he decide to proceed with that plea, but it is not meant to be a full recitation of the facts. The reality is in this case is that everybody preceded, certainly the government did, assuming that both the Southern California conduct involving Nordstrom and the Colorado conduct involving Target would be subsumed by count 1. That is, as you noted, Judge Graber, count 1 is temporally broad enough to encompass both sets of conduct. It also is geographically broad enough insofar as it uses the term elsewhere. That's exactly how the criminal complaint was drafted, but literally count 1, the count that you pleaded to from the indictment, mirrors count 1, the only count. Sotomayor, what are we to make of Mr. Libby's assertion that there's a warrant outstanding for his arrest in Colorado? Is that a State warrant? Because if he's already been convicted of the Target offenses, why is there a warrant outstanding for the Target offenses? I don't know, Your Honor. I was not aware of that warrant. But even if there was a warrant and it was a State prosecution, there would be no problems, there would be no damage at the bar. Right. If it was a Federal prosecution, then I guess there would be a problem. Right. That's why I'm asking you. It could raise that claim. But I guess first come, first served would be in part the answer in that, you know, we got to the defendant first. So if he were later just theoretically convicted in Colorado State court for the offenses against Target and its customers, then presumably he wouldn't be liable twice for the same restitution. I think the State court in Colorado under this hypothetical could still impose restitution, but then he could seek essentially an offset in one of the – against one of the two judgments. But you agree he couldn't pay – wouldn't be obliged to pay it twice. And as Judge Silverman pointed out, he'll probably never pay it once. But – That's exactly right. I mean, I guess – and I think Judge Silverman's points go to why even if there was error and it was clear or obvious, and certainly we would concede that prong three of plain error would be satisfied here if prongs one and two were satisfied. There's really no basis under prong four to exercise discretion and grant relief here. Not only is this case exceedingly close to invited error in that defendant had five opportunities to object to the notion that he would be responsible for up to $160,000 in restitution and said nothing. I mean, again, our view is that the parties understood that this case would proceed precisely this way up until it got on appeal. But then on top of that, yes, the defendant's counsel in district court said he will be deported. That's on excerpts page 17. The district court excused interest on the restitution and fines because he had no assets, had no income. That's also laid out in the PSR in paragraph 66 and 68. And so to the extent that this Court makes it all the way down to prong four, we think this is not a good case for exercising discretion to recognize the plain error. On prong two, though, I guess I'd like to go back a couple steps and explain why we think there is no clear or obvious error here. We've already discussed about the indictment and how the indictment seems broad enough to encompass both sets of conduct. We're also dealing with a statute where it lends itself to this kind of charging and, frankly, the kind of restitution analysis for conspiracy scheme pattern. This is somewhat of an unusual statute, 1029A2, in that it expressly says that anyone who uses one or more unauthorized access devices during any one-year period obtains anything of value, aggregating $1,000 or more during that period, shall be guilty of a felony. The key word is aggregating. That necessarily bespeaks the possibility of proceeding on a pattern theory. And kind of like in wire fraud and mail fraud where we can proceed on a scheme theory or a material misstatement, material omission theory, this statute allows the government to proceed under either theory, one theory being here was one false Let's see how that helps you, because you still have to demonstrate, let's say you've done a lot of things worth $100, where you're going to have to prove or have him agree to a whole bunch of different things explicitly to get to your minimum floor. And here, either, certainly the things that he did discuss in the factual basis were sufficient under the statute without looking to the target. No, that's correct. But, you know, all that's required for a factual basis, I mean, this Court has said time and again, including a couple weeks ago in NICL, all that's required for a factual basis is for a defendant not to contradict an element of the offense and for there to be, you know, a minimally sufficient factual basis. And that's why in our government's excerpts page 9 status report we said, here are some of the facts that we would prove if this went to trial, but it's not exhaustive. And so, again, if you look at the fact that the statute allows aggregation, an aggregation is really close to scheme or pattern, if not scheme or pattern within the meaning of the MBRA. You look at how this particular account was charged. You look at how everybody treated this case, the government, defense counsel, probation office, district court. This is an appropriate case for ordering restitution for both sets of conduct. And Mr. Libby cited the Gordon case from the Tenth Circuit, and he's absolutely right. In that case, the Tenth Circuit found plain error. That was also an aggregation case. But then you also have the First Circuit in Acosta, which both parties discussed in their brief. And that case is very much like this case. In that case, you had seven different gift cards purchased with different credit cards from different victims over a nine-month period that was then aggregated to $2,000 to meet the $1,000 threshold in the statute. And the district court did not include all of the possible loss and all of the possible offense conduct in calculating the guideline range. The district court only went up to about $20,000. And the government wanted to go even higher to $37,000, wanted to use loss that was occasioned by or caused by evidence that the government only learned of because of an unlawful arrest and confession. And the First Circuit said there was no plain error in that case because this is an aggregation statute and because the indictment, as here, was sufficiently broad temporally to encompass both the expressly charged conduct, which in that case was actually narrower. It was one listed American Express card, and then all this additional conduct. So you have this broad date range and you have an aggregation statute. And so we think this case is much more like Acosta than Gordon, which frankly doesn't have much analysis at all. And much more like this case than Blake, the Fourth Circuit's case, that also doesn't really have much analysis at all. And at minimum under prong two, where you cannot have a clear, obvious error when there's conflicting precedent pointing in both directions and this court's not yet opined, we can't have clear, obvious error here. If the panel has no further questions, I'm happy to yield my time back. Thank you. Thank you. Thank you very much, Mr. Mondry. Mr. Libby, back to you. You've got about a minute. Your Honor, as counsel noted, in the May case, the decision does use the words plain error at some point in the decision. Plain error was being used in its generic sense, that the error was plain there, but the decision makes very clear that it was a blind and over review, not plain error review. What do you make of the point that Mr. Mondry made, that he was told at the change of plea that his exposure was in the $160,000 range? Your Honor, the government misrepresented to the defendant that he was potentially subject, that he was subject to restitution beyond the offense of conviction. That was a misstatement of fact and law. Who misstated that? The government. Didn't the judge tell him that? The court then also, following what the government had indicated, then continued that misstatement. And Mr. Zhu says okay, his lawyer says okay. No one said okay, Your Honor. What the court essentially said to Mr. Zhu was, I am going to impose an illegal order of restitution, do you understand? And his response was, I understand. Why don't we call the judge saying that? I'm paraphrasing, of course, Your Honor. No, what the judge told him is your exposure here is $160,000 and everybody at the time seemed to think that was correct. Or no one said it was incorrect. It is certainly true that no one said that was incorrect. But, Your Honor, it would be no different than if the government had misstated his statutory maximum sentence instead of 10 years was 20 years. Did that then mean he was then subject to a sentence beyond 10 years? Of course not. There's no difference here. It was an illegal sentence. And that's where we're left. The restitution order needs to be vacated and limited to the Nordstrom charges. I would note with respect to the indictment, the dates in the indictment match the dates of the Nordstrom fraud. That's where those dates come from. And when one then also looks at the government's sentencing position, it has a section on offense conduct, where it again only references the Nordstrom charges. And then in a separate section under defendants of other criminal past, past criminal history, it then discusses the target. The government was well aware target had nothing to do with the offense of conviction, unless the Court has additional questions. Roberts. Thank you, Mr. Giuliano. Mr. Andre, thank you. The case argued is submitted.
judges: Tashima, Silverman, Graber